UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JOSE QUELIZ and ANNE CALLE, individually and on behalf of
all others similarly situated,

Plaintiffs,

CIVIL ACTION NO.

-against-

COMPLAINT

SONEROS BAR RESTAURANT, INC., HAIRO'S PLACE INC.,
and JAIRO RODRIGUEZ,

Defendants.
-------------------------------------------------------------------------------X

Plaintiffs Jose Queliz and Anne Calle, individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Soneros Bar Restaurant, Inc., Hairo's Place Inc., and Jairo Rodriguez, respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

1.      This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Laws §§ 190 *et seq.* and 650 *et seq.* ("NYLL"), and the Internal Revenue Code, 26 U.S.C. § 7434.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and 26 U.S.C. § 7434.

3.      This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.    Plaintiffs are individuals residing in the State of New York.

6.    At all relevant times, Plaintiffs were employed by Defendants.

7.    While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.    Plaintiffs are covered employees within the meaning of the FLSA and NYLL.

9.    Soneros is a domestic corporation with its principal place of business located at 92-02 Corona Avenue, Elmhurst, New York 11373.

10.    Hairo's is a domestic corporation with its principal place of business located at 81-09 Roosevelt Avenue, Jackson Heights, New York 11372.

11.    Upon information and belief, Rodriguez is an individual residing in the State of New York.

12.    At all relevant times, Rodriguez was and still is officer, director, shareholder, owner, and/or person in control of Soneros and Hairo's, who exercised significant control over the operations of the businesses and had the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determined the rates and methods of payment for employees; and maintained employment records.

13.    At all relevant times, Rodriguez was responsible for setting Plaintiffs' schedules and day-to-day activities and for supervising their performance.

14.    At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

15.    At all relevant times, Defendants were responsible for compensating Plaintiffs.

16.    Defendants are a single enterprise and/or joint employers that operate for the same business purpose and have common ownership and management.

17.    Defendants are a single enterprise and/or joint employers, who jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs, and are jointly and severally liable in this matter.

18.    Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

19.    Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

20.    Defendants operate in interstate commerce.

21.    Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

22.    The First and Third Causes of Action in this Complaint, which arise out of the FLSA, are brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint, and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

23.    The FLSA Collective Plaintiffs consist of no less than twenty-four (24) similarly situated current and former employees of Defendants who, during their employment with Defendants, work or worked and earned less than the federal minimum wage, and work or worked in excess of forty (40) hours per week and who were damaged due to Defendants' common policy and practices in violation of the FLSA including, *inter alia*, willfully denying them minimum and overtime wages.

24.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees their overtime rates.

25.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

26.     Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

27.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

### Jose Queliz

28.     Defendants employed Queliz from on or around January, 4 2019 until on or around May 3, 2022.

29.     Although Queliz was told that his job title would manager, in reality his primary duties were not managerial and instead included, *inter alia*, cleaning, conducting general maintenance and repairs, receiving food and beverage deliveries, assisting customers, and working as a line cook.

30.     Queliz mainly at Soneros throughout his employment but occasionally performed maintenance work, including plumbing and furniture repair, at Hairo's as required by Defendants.

31.     From on or around January 4, 2019 until in or around May 2019, Queliz regularly worked seven (7) days per week, as follows: Mondays through Thursdays from approximately 12:00 p.m. to approximately 11:00 p.m.; Fridays and Saturdays from approximately 12:00 p.m. to approximately 3:00 a.m. the following day; and Sundays from approximately 12:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately eighty-seven (87) hours per week.

32.     From in or around May 2019 until on or around March 14, 2020, Queliz regularly worked five (5) days per week, as follows: Wednesdays and Thursdays from approximately 12:00 p.m. to approximately 11:00 p.m.; Fridays and Saturdays from approximately 12:00 p.m. to approximately 3:00 a.m. the following day; and Sundays from approximately 12:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately sixty-five (65) hours per week.

33.     From on or around March 15, 2020 until on or around June 20, 2020, Soneros and Hairo's were closed due to the COVID-19 pandemic.

34.     During the COVID-10 pandemic, Queliz's work hours fluctuated significantly based on restrictions placed on restaurants and the needs of the business.

35.     From on or around June 20, 2020 until in or around September 2020, Queliz regularly worked five (5) days per week, as follows: Wednesdays and Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 1:00 p.m. to approximately 2:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately sixty-two (62) hours per week.

36.     From in or around September 2020, until in or around December 2020, Queliz regularly worked seven (7) days per week, as follows: Mondays through Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 1:00 p.m. to approximately 2:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately eighty-six (86) hours per week.

37.     From in or around December 2020 until in or around February 2021, Queliz regularly worked five (5) days per week, as follows: Wednesdays and Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 1:00 p.m. to approximately 2:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately sixty-two (62) hours per week.

38.     From in or around February 2021, until in or around May 2021, Queliz regularly worked seven (7) days per week, as follows: Mondays through Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 1:00 p.m. to approximately 2:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately eighty-six (86) hours per week.

39.     From in or around May 2021 until in or around November 2021, Queliz regularly worked five (5) days per week, as follows: Wednesdays and Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 12:00 p.m. to approximately 4:00 a.m. the following day; and Sundays from approximately 1:00

p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately sixty-eight (68) hours per week.

40.     From in or around November 2021, until in or around February 2022, Queliz regularly worked seven (7) days per week, as follows: Mondays through Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 1:00 p.m. to approximately 2:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately eighty-six (86) hours per week.

41.     From in or around February 2022 until on or around May 3, 2022, Queliz regularly worked five (5) days per week, as follows: Wednesdays and Thursdays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 12:00 p.m. to approximately 4:00 a.m. the following day; and Sundays from approximately 1:00 p.m. to approximately 1:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately sixty-eight (68) hours per week.

42.     Throughout Queliz's employment, Defendants neither tracked the hours Queliz worked nor required Queliz to record his time.

43.     From in or around January 2019 until in or around February 2021, Defendants paid Queliz $300.00 per week, in cash, for all hours worked, including those hours worked over forty (40) per week.

44.     From in or around February 2021 until in or around May 3, 2022, Defendants paid Queliz $300.00 per week in cash and $400.00 per week by check for all hours he worked, including those hours worked over forty (40) per week.

<u>Breach of Contract</u>

45.     In or around November 2018, prior to the start of his employment, Defendants hired Queliz to build and install the interior bar at Soneros as well as to paint the walls in the nightclub.

46.     During his employment, Defendants also promised to pay Queliz additional compensation for certain projects that were outside the scope of his regular job duties, including installing tents for outdoor dining at Soneros during the COVID-19 pandemic; removing and replacing the tents at Soneros with larger outdoor patio tents; and removing all outdoor tents at Soneros and constructing an outdoor patio with seating.

47.     Defendants promised but failed to pay Queliz $18,000.00 for his labor related to these projects.

Fraudulent Filing of Information Returns

48.     From in or around March 2021 until on or around May 3, 2022, Defendants paid Queliz his wages partially by check and partially in cash.

49.      Defendants issued W-2 Forms to Queliz for the tax years 2021 and 2022 that only reflected the wages Defendants paid to Queliz via check during each such year.

50.     As a result, the W-2 Forms that Defendants issued to Queliz for the tax years 2021 and 2022 did not reflect all wages that Defendants paid to Queliz during each such year.

51.     Upon information and belief, Defendants filed the W-2 Forms issued to Queliz for the tax years 2021 through 2022 with the IRS.

52.     Defendants willfully filed false information returns with the IRS related to Queliz's wages, in violation of 26 U.S.C. § 7434.

Anne Calle

53.     Defendants employed Calle as a waitress/bartender from on or around January 4, 2019 until on or around June 16, 2021.

8

54. As a waitress/bartender, Calle's primary job duties included, *inter alia,* preparing beverages for customers, taking food orders, preparing tables for service, and cleaning the nightclub.

55. Calle mainly worked at Soneros throughout her employment with Defendants but did her training at Hairo's at the beginning of her employment with Defendants.

56. From on or around January 4, 2019 until in or around May 2019, Calle regularly worked seven (7) days per week, as follows: Mondays through Thursdays from approximately 2:00 p.m. to approximately 12:00 a.m. the following day; Fridays and Saturdays from approximately 2:00 p.m. to approximately 4:00 a.m. the following day; and Sundays from approximately 2:00 p.m. to approximately 2:00 a.m. the following day, without any proper meal or rest breaks, for a total of approximately eighty (80) hours per week.

57. From in or around May 2019 until on or around March 14, 2020, Calle regularly worked five (5) five days per week as follows: Wednesdays and Thursdays from approximately 11:30 a.m. to approximately 12:00 a.m.; Fridays and Saturdays from approximately 11:30 a.m. to approximately 4:00 a.m. the following day, and Sundays from approximately 11:30 a.m. to approximately 2:00 a.m. the following day, without any meal or rest breaks, for a total of approximately seventy-two and one-half (72.5) hours per week.

58. From on or around March 15, 2020 until on or around June 20, 2020, Soneros and Hairo's were closed due to the COVID-19.

59. From on or around June 20, 2020 until on or around June 16, 2021, Calle regularly worked five (5) days per week as follows: Wednesdays and Thursdays from approximately 2:00 p.m. to approximately 1:00 a.m. the following day; Fridays and Saturdays from approximately 2:00 p.m. to approximately 4:00 a.m. the following day; and Sundays from approximately 2:00

p.m. to approximately 2:00 a.m. the following day, without any meal or rest breaks, for a total of approximately sixty-two (62) hours per week.

60.     Throughout Calle's employment with Defendants, Defendants neither tracked the hours Calle worked nor required Calle to record her time.

61.     From on or around January 4,  2019 until on or around March 14, 2020, Defendants paid Calle $75.00 per day, in cash, for all hours worked, including those over forty (40).

62.     From on or around June 20, 2020 until the end of her employment, Defendants paid Calle $10.00 per hour for all hours worked, including those over forty (40).

63.     Defendants regularly paid Calle her wages in cash, but occasionally paid Calle her wages by personal check.

64.     Although Calle received tips during her shifts, Defendants did not track or record the amount of tips Calle received.

<u>Claims Common to Plaintiffs</u>

65.     At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs were non-exempt employees pursuant to the FLSA and the NYLL and were entitled to overtime compensation for the hours they worked in excess of forty (40) per week.

66.     Despite routinely working in excess of forty (40) hours per week, Plaintiffs and the FLSA Collective Plaintiffs were not paid overtime compensation of one and one-half (1.5) times their regular hourly rate or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of forty (40) per week.

67.     Furthermore, throughout their employment with Defendants, Plaintiffs were not paid at least the applicable New York State minimum wage rate for all hours worked.

68.     Plaintiffs also frequently worked shifts that spanned more than ten (10) hours per day, but were not paid spread of hours pay of one (1) additional hour's pay at the full minimum wage rate for every day in which their shifts exceeded ten (10) hours ("spread of hours pay").

69.     Defendants further failed to furnish to Plaintiffs a payroll notice at the time of their hire, or at any time thereafter, containing Plaintiffs' rates of pay, the designated payday, or other information required by NYLL § 195(1).

70.     Defendants also failed to furnish to Plaintiffs, with each wage payment, an accurate statement listing Plaintiffs' regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

71.     Defendants violated federal and state law by willfully failing to pay Plaintiffs and the FLSA Collective Plaintiffs overtime compensation; by failing to pay Plaintiffs the applicable minimum wages and spread of hours wages; by failing to timely pay Plaintiffs their full amount of wages every week; and by failing to provide Plaintiffs with the required payroll notices and wage statements.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Overtime Violations under the FLSA)*

72.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

73.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage rate, whichever is greater, for all hours worked in excess of forty (40) hours per week.

74.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

75.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular rates of pay or the applicable minimum wage rate, whichever is greater, for each hour worked in excess of forty (40) hours per week.

76.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

77.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to additional damages equal to one hundred percent (100%) of the total amount of wages due ("liquidated damages").

78.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Overtime Violations under the NYLL)*

79.     Plaintiffs repeat and reallege all prior allegations set forth above.

80.     Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

81.     Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

82.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half (1.5) times their regular rate of pay or the applicable minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours per week.

83.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

84.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

85.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of Plaintiffs' unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS**
*(Minimum Wage Violation Under the FLSA)*

86.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

87.     Pursuant to the applicable provision of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to receive at least the statutory minimum hourly wage for all hours they worked.

88.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at least the statutory minimum wages for all hours worked.

89.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required minimum wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid  minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

90.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

91.     Judgment should be entered in favor to the Plaintiffs and against the Defendants on the Third Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Minimum Wage Violations under the NYLL)*

92.     Plaintiffs repeat and reallege all prior allegations set forth above.

93.     Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to receive at least the statutory minimum wage for all hours worked.

94.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs at least the statutory minimum wages for all the hours they worked.

95.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

96.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

97.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of Plaintiffs' unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Spread of Hours Violations Under the NYLL)*

98.     Plaintiffs repeat and reallege all prior allegations set forth above.

99.     Plaintiffs regularly worked shifts that spanned more than ten (10) hours per day.

100.    Defendants willfully failed to pay Plaintiffs additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs' shifts spanned more than ten (10) hours.

101.    By failing to pay Plaintiffs spread of hours pay, Defendants willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to, 12 N.Y.C.R.R. §§ 142-2.4.

102.    As Defendants did not have a good faith basis to believe that their failure to pay spread of hours wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

103.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action in the amount of their unpaid spread of hours wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Failure to Timely Pay Wages Under the NYLL)*

104.    Plaintiffs repeat and reallege all prior allegations set forth above.

105.    Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

106.    During the relevant period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

107.    During the relevant period, Defendants failed to timely pay Plaintiffs all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

108.    Throughout the relevant time period, Defendants failed to pay Plaintiffs all wages earned by Plaintiffs, including minimum wages, spread of hours pay, and overtime wages earned for all hours worked in excess of forty (40) hours per week, in violation of NYLL § 191(1)(a)(i).

109.    As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with reasonable attorneys' fees, interest, and costs.

110.    As Defendants did not have a good faith basis to believe that their failure to timely pay wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

111.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Sixth Cause of Action for all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Failure to Provide Payroll Notices Under the NYLL)*

112.    Plaintiffs repeat and reallege all prior allegations set forth above.

113.    Defendants failed to furnish to Plaintiffs, at the time of hire or at any time thereafter, notices containing the rate or rates of pay and basis thereof; allowances, if any claimed as part of

the minimum wage; the regular pay day designated by the employer; the name of the employer; the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195(1).

114.     As Defendants failed to provide Plaintiffs with payroll notices as required by NYLL § 195(1), Plaintiffs are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

115.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Seventh Cause of Action in the form of liquidated damages amounting to $50.00 per day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

**AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
*(Failure to Provide Wage Statements Under the NYLL)*

116.     Plaintiffs repeat and reallege all prior allegations set forth above.

117.     Throughout the relevant period, Defendants failed to furnish to Plaintiffs, with each wage payment, a statement listing: the regular hourly rates of pay; overtime rates of pay; number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; and net wages; in violation of NYLL § 195(3).

118.     As Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3), Plaintiffs are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

119.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Eighth Cause of Action in the form of liquidated damages amounting to $250.00 per day for every day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

**AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF QUELIZ**
*(Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434)*

120.     Plaintiffs repeat and reallege all prior allegations set forth above.

121.     Starting in or around February of 2021, Defendants regularly paid Queliz part of his wages by check with withholdings for federal, state, and local taxes, and part of his wages in cash without any withholdings for federal, state, and local taxes.

122.     Defendants provided Queliz with copies of the IRS Forms W-2 that Defendants filed with the IRS each calendar year, which reflected only the wages that were paid to Queliz by check.

123.     A Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

124.     Defendants were aware of their duty to accurately report to the IRS all wages paid to Queliz.

125.     Defendants were aware that the W-2 Forms did not reflect wages paid in cash to Queliz.

126.     Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS W-2 forms with false information regarding the wages to Queliz, thereby decreasing Defendants' tax liability.

127.     As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Queliz is entitled to damages in an amount equal to the greater of $5,000.00 or the

sum of any actual damages sustained by Queliz for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

128.    Judgment should be entered in favor of Queliz and against Defendants on the Ninth Cause of Action in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Queliz for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

## AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF OF QUELIZ
*(Breach of Contract)*

129.    Plaintiffs repeat and reallege all prior allegations.

130.    Defendants promised to pay Queliz $18,000.00 in exchange for certain projects that Queliz performed for Defendants at Soneros.

131.    Queliz complied with all of his obligations under his agreement with Defendants.

132.    Defendants failed to pay Queliz the agreed upon amount of $18,000.00 in exchange for the services Queliz provided to Defendants.

133.    Defendants breached their agreement with Queliz by failing to pay Queliz for the services he provided to Defendants.

134.    Judgment should be entered in favor of Queliz and against Defendants on the Tenth Cause of Action in the amount of $18,000.00, plus interest and such other and further relief as the Court deems just and proper.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION ON BEHALF OF QUELIZ
*(Unjust Enrichment)*

135.    Plaintiffs repeat and reallege all prior allegations.

136.    Queliz performed a significant amount of work for Defendants for which he was not properly paid.

137.     Defendants agreed, as a matter of fact or by operation of law, to pay Queliz for the work he performed at Soneros.

138.     As a result of this failure to pay Queliz for the work he performed, Defendants were unjustly enriched at the expense of Queliz.

139.     It would be inequitable and unconscionable to permit Defendants to retain the value of Queliz's services without making full payment.

140.     Equity demands that Defendants be compelled to pay for this benefit.

141.     Judgment should be entered in favor of Queliz and against Defendants on the Eleventh Cause of Action in an amount no less than $18,000.00, plus interest and such other and further relief as the Court deems just and proper.

### AS AND FOR A TWELFTH CAUSE OF ACTION ON BEHALF OF QUELIZ
*(Quantum Meruit)*

142.     Plaintiffs repeat and reallege all prior allegations.

143.     Queliz performed valuable services at the request and for the benefit of Defendants.

144.     Queliz was not paid for the services construction projects he performed for Defendants at Soneros.

145.     Queliz is entitled to payment for the fair and reasonable value of the services he provided to Defendants.

146.     It is improper for Defendants to retain the benefit of the services provided by Queliz without making proper payment.

147.     Defendants are obligated to pay the fair and reasonable value for the services provided by Queliz.

148.     Judgment should be entered in favor of Queliz and against Defendants on the Twelfth Cause of Action in an amount no less than $18,000.00, plus interest and such other and further relief as the Court deems just and proper.

**WHEREFORE** Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, pray for relief as follows:

a) on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all overtime wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for all spread of hours wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

f) on the Sixth Cause of Action for all wages due Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

g) on the Seventh Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney fees in an amount to be determined by this Court;

h) on the Eighth Cause of Action for liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees in an amount to be determined by this Court;

i) on the Ninth Cause of Action for damages in the amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Queliz, and attorneys' fees in an amount to be determined by this Court;

j) on the Tenth Cause of Action on behalf of Queliz for damages in the amount of $18,000.00;

k) on the Eleventh Cause of Action on behalf of Queliz for damages in an amount no less than $18,000.00;

l) on the Twelfth Cause of Action on behalf of Queliz for damages in an amount no less than $18,000.00;

m) interest;

n) costs and disbursements; and

o) such other and further relief as is just and proper.

Dated: New York, New York
       January 10, 2023

*/s/ Eliseo Cabrera*
Eliseo Cabrera
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
edcabrera@katzmelinger.com
*Attorneys for Plaintiffs*